## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO: 18-CR-30043-SEM-TSH |
| | ) | |
| NATHANIEL STONE, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO INFORMATINO CHARGING PRIOR OFFENSES

NOW COMES the Defendant, Nathaniel Stone, by his attorney, William L. Vig, and moves this Court to enter an order finding that his prior conviction, cited by the Government in its Amended Information Charging Prior Offenses (d/e 77), does not constitute a serious drug offense under the Armed Career Criminal Act, 18 U.S.C. § 924, and in support thereof, states as follows:

### SUMMARY OF ARGUMENT

The First Step Act of 2018 become effective on December 21, 2018. As a result, the enhanced mandatory minimum penalties of Section 841(b)(1)(A) now only apply to defendants previously convicted of a "serious drug felony" or a "serious violent felony." Section 802(57) now defines "serious drug felony" using the definition of "serious drug offense" in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(A). These amendments apply to the sentencing of Defendant because he has not been convicted or sentenced on these matters.

Defendant's prior Illinois state conviction for Possession of Methamphetamine Manufacturing Materials (720 ILCS 646/30) is not a "serious drug offense" as defined in Section 924(e)(2)(A). Therefore, it is also not a "serious drug felony" as defined in Section 802(57).

First, Possession of Methamphetamine Manufacturing Materials is not punishable by a maximum term of imprisonment of ten years or more, as required of all state-law "serious drug offenses" under Section 924(e)(2)(A)(ii). Defendant's sentence of three years imprisonment for this prior conviction proves that he was not subject to "extended term sentencing" under 730 ILCS 5/5-4.5-35. Further, the Government has not alleged in its Amended Information (d/e 77) facts proving that Defendant was subject to imprisonment of ten years or more, and cannot do so consistent with federal recidivism and Sixth Amendment jurisprudence. Therefore, Defendant's prior conviction does not qualify him for enhancement under Section 841(b)(1)(A).

In addition, Possession of Methamphetamine Manufacturing Materials is not a "serious drug offense" because it is not a categorical match for the relevant predicate generic offenses. Recent Supreme Court and Seventh Circuit precedent has clarified that the formal categorical approach applies to determining if a given offense can act as a sentence enhancement predicate under both Section 924(e)(2) and Section 841(b)(1)(A). This same precedent establishes that any deviation from a formal, elements-focused analysis is inappropriate and runs afoul of the issues the Supreme Court attempted to resolve with the creation of the categorical approach in

*Taylor v. U.S.*, 495 U.S. 575 (1990). Under the categorical approach, the elements of the Illinois statute are broader than the elements of the relevant ACCA predicate offenses and, therefore, the Illinois statute cannot act as an enhancing predicate.

Finally, the Illinois statute is not divisible. Therefore, this Court need not engage in the modified categorical approach. The Illinois statute uses alternative phrasing to delineate distinct means whereby an accused could satisfy its elements. The statute does not delineate distinct, alternative elements constituting distinct offenses. Therefore, the statute does not implicate the purposes of the modified categorical approach.

## PROCEDURAL BACKGROUND

On July 10, 2018, a Grand Jury returned a four-count indictment against Defendant and two co-defendants; a four-count superseding indictment was returned on October 2, 2019. (d/e 21 and d/e 70). Relevant to the present objection are Counts I, II, and III, each of which allege that Defendant knowingly and intentionally conspired/possessed/attempted to possess, respectively, with intent to deliver 50 grams or more of methamphetamine (actual) in violation of Title 21, United States Code, Sections 841 (a)(1), (b)(1)(A) and 846. (d/e 70).

On November 12, 2019, the Government filed, pursuant to 21 U.S.C. § 851(a)(1), an Amended Information Charging Prior Offenses. (d/e 77). Therein, the Government asserted that Defendant is subject, on each Count I, II, and III, to an enhanced sentence of imprisonment of not less than 15 years and not more than life imprisonment, a fine not to exceed $20,000,000, and a term of supervised release of

not less than 10 years and up to life. *Id.* The government based said enhancement on Defendant's prior conviction, in Morgan County, Illinois, case number 2010-CF-29, for Possession of Methamphetamine Manufacturing Materials. *Id.* The Illinois General Assembly criminalized the Possession of Methamphetamine Manufacturing Materials at 720 ILCS 646/30:

> (a) It is unlawful to knowingly engage in the possession, procurement, transportation, storage, or delivery of any methamphetamine manufacturing material, other than a methamphetamine precursor, substance containing a methamphetamine precursor, or anhydrous ammonia, with the intent that it be used to manufacture methamphetamine.

> (b) A person who violates subsection (a) of this Section is guilty of a Class 2 felony.

On February 12, 2020, Defendant filed his Objection to Amended Information Charing Prior Offense, and requested therein that the Court enter a briefing schedule on this issue prior to trial or an entry of a guilty plea. (d/e 89). This Court subsequently entered an Order on March 6, 2020, directing that Defendant file his Memorandum of Law by March 19, 2020, and that the Government may respond by April 2, 2020.

## FIRST STEPT ACT

Section 401 of the First Step Act, "Reduce and Restrict Enhanced Sentencing for Prior Drug Felonies," amended both 21 U.S.C. § 802 and 21 U.S.C. § 841(b)(1). Under these amendments, Congress struck from Section 841(b)(1) language triggering enhancement due to "a felony drug offense" and lowered the resultant enhanced mandatory minimum sentence. Section 841(b)(1) now reads, in pertinent part:

If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years…

In addition, Congress amended the definitions contained in Section 802 to define the phrase 'serious drug felony' as:

An offense described in section 924(e)(2) of title 18, United States Code, for which –
(A) The offender served a term of imprisonment of more than 12 months; and
(B) The offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense.

The referenced code section, 18 U.S.C. §924(e)(2), is part of the Armed Career Criminal Act (herein "ACCA"). Thus, an analysis of the recidivism provisions of Section 841 now calls for analysis of the ACCA as well.

Under Section 401(c) of the Act, these amendments apply to any pending case in which the offense was committed before the date of enactment, if a sentence has not been imposed as of such enactment. This is the situation in which Defendant finds himself. Therefore, the amendments enacted in the First Step Act apply to sentencing in this case.

## ARGUMENT

This case presents an issue of first impression: whether the Illinois offense of Possession of Methamphetamine Manufacturing Materials can be used as a predicate offense for sentencing enhancements under federal recidivism statutes. Due to the amendment to 21 U.S.C. §841 and 21 U.S.C. §802, Defendant's prior conviction for this offense no longer qualifies him for enhanced sentencing.

Therefore, this Court should dismiss or strike the Government's Amended Information. (d/e 77).

Under the new framework established by the First Step Act, the Illinois offense of Possession of Methamphetamine Manufacturing Materials is not a serious drug felony for two reasons. First, it is not, under Illinois law, punishable by a maximum sentence of imprisonment of ten years or more. Second, under the categorical approach to sentencing enhancement, the elements are broader than the elements of the relevant generic offenses. Therefore, the Government lacks grounds on which to enhance Defendant's mandatory minimum sentence.

**I.     Possession of Methamphetamine Manufacturing Materials is not an ACCA predicate offense because it is not punishable by a maximum term of imprisonment of ten years or more.**

The plain language of 18 U.S.C. §924(e)(2)(A)(ii) renders Defendant's prior conviction inapplicable as an ACCA (and now, therefore, Section 841(b)(1)(A)) predicate offense. Possession of Methamphetamine Manufacturing Materials is not punishable by "a maximum term of imprisonment of ten years or more…" The Illinois General Assembly classified a violation of 720 ILCS 646/30 as a Class 2 felony. In Illinois, pursuant to 730 ILCS 5/5-4.5-35(a), Class 2 felonies carry a potential prison sentence of between three (3) and seven (7) years. This same code section states that an "extended term" prison sentence for a Class 2 felony "shall be a term not less than 7 years and not more than 14 years." (emphasis added). In Morgan County Case Number 2010-CF-29, Defendant was sentenced to three years imprisonment. According to the plain language of 730 ILCS 5/5-4.5-35(a), if a

defendant is subject to an extended term sentence on a Class 2 felony in Illinois, that defendant <u>shall</u> be sentenced to a term of not less than seven years in prison. To sentence an extended term defendant to three years would be a violation of Section 5-4.5-35. Accordingly, Defendant was not subject to an extended term for the offense of Possession of Methamphetamine Manufacturing Materials and the Government cannot meet its burden in establishing that he was subject to a sentence of ten or more years imprisonment in Morgan County Case 10-CF-29 as alleged in its Amended Information.

In addition, the Government's Amended Information fails to present sufficient evidence showing that the Defendant could have been subject to an extended term, and the strict, elements-based analysis required by *Taylor* and its progeny (discussed *infra*) do not allow the Government to offer such evidence.

Illinois extended term sentencing is governed by 730 ILCS 5/5-8.2. Section 5/5-8.2 requires that, for extended terms to apply, a court must: 1) find the presence of an aggravating factor listed in 730 ILCS 5/5-3.2 or 730 ILCS 5/5-8.1(a)(1)(b); 20 require inclusion in a charging document and proof beyond a reasonable doubt of any aggravating factor other than the existence of a prior conviction, in accordance with 725 ILCS 5/111-3(c-5); and, 3) admonish on the record any defendant entering a plea of the applicability of an extended term sentence.

To sufficiently determine that the Morgan County Circuit Court fully complied with 730 ILCS 5/5-8-2 would require a thorough review of the entire transcript of the plea and sentencing hearings in that matter. Such an inquiry

would run counter to the rationale running through *Taylor, Mathis,* and *Elder* (discussed *infra*) that justice requires an elements-only approach because it would be unfair to expect a defendant to object to potentially inconsequential-at-the-time errors which may or may not lead, ten years later, to significant mandatory federal prison time.

Accordingly, the sentence Defendant received in Morgan County 10-CF-29 dictates that the maximum term of imprisonment he faced was seven years. Further, the Government has not, and cannot, present this Court with evidence proving that Defendant was subject to a term of imprisonment of any greater length. Therefore, this Court should find that Defendant's prior conviction does not qualify as a predicate offense under 21 U.S.C. §841 and 18 U.S.C. §924(e)(2).

**II.     The categorical approach is the appropriate analysis to determine whether Possession of Methamphetamine Manufacturing Materials triggers enhanced penalties under 21 U.S.C. §841(b)(1)(A).**

If this Court determines further analysis is required, the Supreme Court has established a specific framework, the so-called formal categorical approach, for determining whether a prior conviction qualifies a defendant for an enhanced sentence under federal recidivist statutes. *See Taylor v. U.S.*, 495 U.S. 575, 600 (1990); *see also Descamps v. U.S.*, 570 U.S. 254 (2013). The formal categorical approach is the appropriate analysis to apply in this case. The formal categorical approach is appropriate analysis to apply to this case. The categorical approach considers only the elements of statutes, and is distinguished from analyses which may consider the specific conduct or facts underlying a prior conviction. *Mathis v.*

_U.S._, 136 S.Ct. 2243, 2248 (2016).  The categorical approach compares the elements of the offense of prior conviction with the elements of the "generic" form of the offenses enumerated in the relevant federal recidivism statute (_i.e._, burglary, arson, distribution of a controlled substances, etc.) to determine whether they are a categorical match.  _Id._  A categorical match exists if the elements of the prior offense are identical to or narrower than the elements of the generic offense.  _Id._  If the court finds a match exists, the analysis ends and the defendant is subject to enhancements under the federal recidivist statute.  _See Descamps_, 570 U.S. at 260-61.  If the statute of prior conviction is broader than the generic offense, the prior conviction cannot serve as an enhancing predicate.  _Id._

In a narrow range of cases, courts have recognized the need to apply a so-called "modified" categorical approach.  However, as discussed below, the modified categorical approach does not apply to the present case.  The modified categorical approach was designed to aid courts in applying federal recidivism statutes when the statute of prior conviction is "divisible."  _Mathis_, 136 S. Ct. at 2249.  A statute is divisible if its language defines, in the same code section, multiple offenses with multiple, alternative elements.  _Id._  If the statute of prior conviction is divisible, courts may examine a limited set of documents to determine under which alternative elements the defendant was convicted.  _Id._, _citing Shepard v. U.S._, 544 U.S. 13, 26 (2005).  However, the _Mathis_ Court distinguished between divisible statutes, with their alternative _elements_, and alternatively-phrased, indivisible statutes which enumerate alternative _means_ of committing a single element.  _Id._  If

a state statute merely enumerates a list of alternative means whereby a defendant could satisfy a single element of the offense, the modified categorical approach does not apply. *Id.* Because the Illinois statute at issue here is indivisible under *Mathis*, the modified approach does not apply.

Courts have applied the categorical approach to the recidivism provisions of both the ACCA (as in *Taylor, Descamps,* and *Mathis*) and 21 U.S.C § 841. *See e.g., U.S. v. Elder*, 900 F.3d 491, 501 (7th Cir. 2018). Under the Seventh Circuit's holding in *Elder*, the categorical approach is the appropriate analysis to apply to the recidivism provisions of Section 841.

### A. The amendments of the First Step Act did not disturb the reasoning of the *United States v. Elder* – the categorical approach applies to 21 U.S.C. § 841.

In *Elder*, after a thorough analysis, the Seventh Circuit held that like the ACCA, Section 841 was written to enhance sentences only based on a defendant's prior convictions, not his prior conduct. *Elder*, at 499. The *Elder* Court emphasized that Section 841(b)(1)(A) refers to defendants who have a prior *conviction*, not defendants who have *committed* the requisite prior offenses. *Id.* Second, the Seventh Circuit held that because Section 841 requires a sentencing court not to look just to the mere fact of a prior conviction but also to the nature of any prior conviction, any approach but the categorical approach "would raise serious Sixth Amendment concerns because it could allow the sentencing court to go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense." *Id.* at 501. (internal quotations omitted). Finally, the

Court determined that the categorical approach is the best method to avoid unfairness to defendants – its focus on statutory elements, rather than "extraneous facts," diminishes the risk of inaccurate, uncorrected, or previously unchallenged records from prior convictions triggering lengthy mandatory sentences. *Id.* at 500-01.

The *Elder* Court's holding remains sound in the face of the First Step Act's amendments. The only practical change to the statutory scheme considered in *Elder* is the move from looking for "a prior conviction for a felony drug offense" to "a prior conviction for a serious drug felony or serious violent felony." This change boils down to the replacement of 21 U.S.C. § 802 (44) with 18 U.S.C. § 924(e)(2) as the provision defining the relevant prior convictions. Section 802(44) defines "felony drug offense" as:

> an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances.

As noted above, 18 U.S.C. §924 (e)(2) is a provision of the ACCA. Section 924(e)(2)(A) defines "serious drug offense" disjunctively as:

> (i)   An offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 US.C. 951 et seq.), or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law; or
>
> (ii)  An offense under State law, involving manufacturing, distributing, or possession with intent to manufacture or distribute, a controlled substances (as defined in section 102 of the Controlled Substances Act (21 USC 802), for which a maximum term of imprisonment of ten years or more is prescribed by law;

In holding that the categorical approach applied to Section 841, the *Elder* Court was particularly focused on the statute's concern for the existence of particular prior convictions, rather than any reference to specific prior conduct. This feature of Section 841 is unchanged. The amended Section 841 still focuses squarely on the existence of prior convictions, not on the conduct leading to such a conviction. Replacing Section 802(44) with the ACCA's Section 924(e)(2) as the operative definition of said convictions merely alters, and, indeed, narrows the class of prior convictions triggering enhanced mandatory minimums.

In addition, the *Elder* Court wrote that the language of Section 802(44), by specifying that the relevant prior convictions were those offenses relating to certain substances under "any law of the United State or of a State or foreign country" reinforced its conclusions. This language placed the focus on the elements of the law of conviction rather than a defendant's actual conduct related to the enumerated substances. *Elder*, 900 F.3d at 499. Section 924(e)(2) of the ACCA shares this feature. Section 924(e)(2)(A) includes, in paragraph (i), a select set of enumerated federal drug offenses without any language referencing conduct. In paragraph (ii), the statute refers to state offenses "involving manufacturing, distributing, or possessing with intent to manufacture or distribute" in much the same way as Section 802(44) refers to offenses "relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." Thus, in both paragraphs, Section 924(e)(2) is concerned with identifying relevant prior *offenses*, not prior *conduct*, just as the *Elder* Court recognized Section 802(44) was.

For each of these reasons, the amendments of the First Step Act do not create any reason to deviate from the precedent established in *Elder*.  The newly established statutory scheme si sufficiently identical, such that determining whether a prior conviction qualifies a defendant for enhancement under Section 841(b)(1)(A) still requires application of the categorical approach.

**B. Inclusion of the word "involving" in ACCA Section 924(e)(2)(A)(ii) does not alter the applicability of the categorical approach.**

In the past, the Government has argued, and some courts have held, that the word "involving" in the phrase "involving manufacturing, distributing, etc." expands the category of predicate offenses beyond the definitions of 21 U.S.C. §802 to capture some statutes merely related to or connected to such conduct, and allows courts to do more than the mere comparison of elements called for by the categorical approach.  *See U.S. v. Gibbs*, 656 F.3d 180, 185-86(3d Cir. 2011), *citing U.S. v. Vickers*, 540 F.3d 356, 365 (5th Cir. 2008); *U.S. v. McKenney*, 450 F.3d 39, 42 (1st Cir. 2006); *U.S. v. Alexander*, 331 F.3d 116, 131 (D.C. Cir. 2003); *U.S. v. King*, 325 F.3d 110, 113 (2d Cir. 2003), *U.S. v. Brandon*, 247 F.3d 186, 191 (4th Cir. 2001).  Indeed, the Government made a nearly identical argument in *Elder*.  (Brief for the United States, *U.S. v. Elder*, No. 17-22047, Document 19).  This Court should disregard such arguments and holding for a number of reasons.

First and foremost, the Seventh Circuit has not held that "involving" has such and effect on the analysis.  Absent such a ruling, the decisions of any other circuit are not binding.  Instead, in *Elder*, the Seventh Circuit conducted a straightforward categorical analysis of 21 U.S.C. §841(b)(1)(A) without any such

expansion of predicate offenses or consideration of particular conduct. As discussed above, 21 U.S.C. §802(44), defining "felony drug offense," was the relevant generic offense definition at the time. *Elder*, 900 F.3d at 497-98. Section 802(44) defined this term by reference to statutes restricting conduct "relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." *Id.* The *Elder* Court held the categorical approach applied, without any mention that such language might expand the set of predicate statutes beyond those criminalizing the specifically enumerated substances or call for a fact-based analysis. The ruling in *Elder* was based upon the fact that the statute of prior conviction under consideration criminalized conduct related to unlisted substances. It is entirely unclear how "involving" could have any impact on the meaning of a statute different from that which "relating to" would have. These are substantially synonymous terms. If "relating to" had no impact on the *Elder* Court's analysis, it is safe to conclude that "including" would have no impact on the analysis required here.

Tellingly, the Government specifically argued in *Elder* that the categorical approach did not apply to Section 802(44) because of the inclusion of the phrase "relating to." In briefing, the Government pondered "And, anyway, what would be a generic offense "relating to" another offense?" (Brief for the United States, *U.S. v. Elder*, No. 17-2207, Document 19, at 9-10) and relied on older cases predating *Mathis* to support its positions. The *Elder* Court answered the Government's rhetorical question by specifically finding that the categorical approach still applies to statutes phrased as Section 802(44) is. There is no reason to expect the analysis

would be different here. Rather, the *Elder* Court's rejection of this argument is powerful indication that the Seventh Circuit will not follow other circuits in this regard.

In addition, the courts cited above that have taken this expansive view of Section 924(e)(2)(A)(ii) did so prior to the Supreme Court's landmark decisions in *Mathis* and in *Johnson v. U.S.*, 135 S.Ct. 2551 (2015). First, the *Mathis* Court reiterated that an ACCA analysis requires a categorical approach and that "the modified approach serves – and serves only – as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders on (or more) of them opaque." 136 S.Ct. 2243 at 2253. Thus, courts that apply a fact-based ACCA analysis or use a version of the modified approach to investigate the *conduct* underlying a prior conviction violate the Sixth Amendment prohibition against the use of facts not proven beyond a reasonable doubt to enhance sentences. *Id.* (ruling the court below improperly considered irrelevant facts).

Perhaps more seriously in the present context, the Court in *Johnson* held unconstitutionally vague the so-called residual clause of ACCA Section 924(e)(2)(B) ("involves conduct that presents a serious potential risk of physical injury to another"). 135 S.Ct. at 2257. The Court was particularly concerned that courts had historically used this broad phrasing to concoct a "judicially imagined ordinary case of a crime" to assess whether that ordinary case sufficiently "involved" a serious potential risk of injury, leading to unpredictability and arbitrary rulings. *Id.* at 2258. Further, the *Johnson* Court specifically rejected the Government's attempt to

save the residual clause by allowing a review of the actual conduct involved in a prior conviction. *Id.* at 2561-62. The Court refused to "jettison for the residual clause (though not for the enumerated crimes) the categorical approach" and reaffirmed the efficacy of the categorical approach. *Id.*

Yet, upon review, the courts applying expansive reading of "involving" have run afoul of these rulings in one way or another. In *U.S. v. Brandon*, relied upon by subsequent courts taking the expansive view of "involving," the Fourth Circuit specifically relied on cases construing the residual clause of Section 924(e)(2)(B)(ii). 247 F.3d at 191, *citing U.S. v. Stephens* 237 F.3d 1031, 1033 (9th Cir. 2001). The *Brandon* Court concluded that, in order to allow for both its reading of "involving" and *Taylor's* prohibition on the consideration of particular facts, a reviewing court must decide "whether the abstract crime intrinsically involves the proscribed *conduct*." *Id.* at 191. (emphasis added). The court then engaged in precisely the sort of tortured judicial abstraction and consideration of hypotheticals which the *Johnson* Court held revealed the unconstitutional vagueness of the residual clause. *See also U.S. v. Vickers* 540 F.3d at 365-67 (engaging in speculation regarding "ordinary cases" and using a modified approach to attempt to reach facts of conduct). Therefore, *Brandon* cannot be considered guiding precedent in this area.

In *McKenney*, the court specifically rejected a reading of "involve" as meaning "has an element," (a dictionary definition of the word). 450 F.3d at 42-45. *See also U.S. v. King*, 325 F.3d 110 at 113-14 ("where Congress frames a factor in terms of an "involvement" with a certain crime, the proper focus of the inquiry is broader

than the mere elements of the crime."); *U.S. v. Alexander*, 331 F.3d 116 (holding based entirely of *Brandon* and *King*).  However, the message of *Mathis* is clear: the categorical approach is the only appropriate method under which to determine whether a prior conviction is an ACCA predicate offense, and the categorical approach is *nothing more than* a comparison of elements, further, to read the ACCA as requiring or allowing anything more results in the sort of judicial speculation rejected by *Johnson*.  Therefore, Courts that rejected a reading of "involving" as a reference to elements of generic offenses were mistaken.

Finally, the Third Circuit's decision in *U.S. v. Gibbs*, 656 F.3d 180, which cited to all of the above, is simply a misapplication of the modified approach under *Mathis*.  The court's discussion of the meaning of "involving" was, in the end, superfluous to its ultimate holding.  The court ruled that, under the modified categorical approach, a Delaware statute criminalizing the wearing of body armor during the commission of a felony is a serious drug offense when the underlying felony is possession with intent to distribute a controlled substance.  *Id.* at 189.  Under *Mathis*, this statute is indivisible.  Proof of the crime requires proof of the commission of a felony.  Each particular underlying felony that would satisfy this single element is merely an alternative *means*, not itself an alternative *element*.  Therefore, the statute was indivisible and the court never should have reached the issue of what particular felony the defendant committed while wearing body armor.  Further, to the extent that *Gibbs* relied on *Brandon*'s reading of "involving" as

permitting a more expansive approach to the ACCA, the court ran afoul of the rationale underpinning *Johnson*, and the decision is flawed.

For each of these reasons, the cases following the expansive reading o "involving" are not guiding precedent in the face of *Johnson* and *Mathis*. Further, the Seventh Circuit has already rejected nearly identical arguments in *Elder*. Therefore, this Court should disregard reject any arguments based upon them and apply the categorical approach established by *Taylor* and clarified by its recent progeny.

### III. Under the categorical approach, Possession of Methamphetamine Manufacturing Materials is broader than the relevant generic offenses and not an ACCA predicate offense.

In light of the above, the primary question before this Court is whether Possession of Methamphetamine Manufacturing Materials is a categorical match for the relevant generic offenses enumerated in Section 924(e)(2)(A). Because the offense of prior conviction is a State of Illinois offense, subparagraph (ii) of Section 924(e)(2)(A) sets out the relevant generic offenses. There, Congress included as predicate state offenses "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance," and defined these terms with reference to 21 U.S.C. §802. Thus, courts applying the categorical approach to Section 924(e)(2)(A)(ii) have looked to the definitions of 21 U.S.C. §802 for the definitions and elements of the relevant generic offenses. *See Pulley v. Saad*, 2018 U.S. Dist. LEXIS 180329, 13-14 (N.D. Ind. October 22, 2018), *citing U.S. v. Goldston*, 906 F.3d 390, 394 (6th Cir. 2018) (noting that the ACCA "incorporates by

reference" the definitions of the Controlled Substance Act and employing same in categorical analysis).

First, it is essential to determine the elements of the Possession of Methamphetamine Manufacturing Materials. The Illinois Pattern Jury Instructions – Criminal published by a committee of the Illinois Supreme Court, do not contain pattern instructions delineating the elements of this offense (a reflection on the rarity with which it is charged). As noted above, the Illinois statute, 720 ILCS 646/30, makes it unlawful to:

> knowingly engage in the possession, procurement, transportation, storage, or delivery of any methamphetamine manufacturing material, other than a methamphetamine precursor, substance containing a methamphetamine precursor, or anhydrous ammonia, with the intent that it be used to manufacture methamphetamine.

Thus, a straightforward reading of the statute indicates that a conviction would require proof beyond a reasonable doubt that the defendant: (1) knowingly possessed, procured, transported, stored or delivered any methamphetamine manufacturing material; (2) that the methamphetamine manufacturing material possessed, procured, transported, stored, or delivered by defendant was not a methamphetamine precursor, substance containing a methamphetamine precursor, or anhydrous ammonia; and, (3) that the defendant possessed, procured, transported, stored, or delivered this material with the intent that it would be used to manufacture methamphetamine.

It is apparent, in light of the definitions of the terms used in the statutes, that none of the enumerated generic offenses capture the conduct the Illinois

General Assembly criminalized in Section 646/30, leaving its elements broader than those of the generic offenses. In fact, Section 646/10 defines methamphetamine manufacturing materials as:

> any methamphetamine precursor, substance containing any methamphetamine precursor, methamphetamine manufacturing catalyst, substance containing any methamphetamine manufacturing catalyst, methamphetamine manufacturing reagent, substance containing any methamphetamine manufacturing reagent, methamphetamine manufacturing solvent, substance containing any methamphetamine manufacturing solvent, or any other chemical, substance, ingredient, equipment, apparatus, or item that is being used, has been used, or is intended to be used in the manufacture of methamphetamine.

Section 646/30 then specifically excludes all methamphetamine precursors which are defined by 646/10 as "ephedrine, pseudoephedrine, benzyl methyl ketone, methyl benzyl ketone, phenylacetone, phenyl-2-propanone, P2P, or any salt, optical isomer, or salt of an optical isomer of any of these chemicals" and anhydrous ammonia. A "methamphetamine" is defined as a Schedule II controlled substance and includes:

> any salt, optical isomer, salt of optical isomer, or analog thereof, with the exception of 3,4-Methylenedioxymethamphetamine (MDMA) or any other scheduled substance with a separate listing under the Illinois Controlled Substances Act.

*Id.* In short, these definitions make clear that the statute under which Defendant was previously convicted is specifically concerned with the possession of materials *other than* methamphetamine and precursors, none of which materials are themselves controlled substances.

Key to this analysis is the fact that Section 924(e)(2)(A)(ii) includes an offense under State law "involving manufacturing, distributing, or possessing with intent to

manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)…" Section 802(6) defines a "controlled substance" as "a drug or other substances, or immediate precursor, included in Schedule I, II, III, IV, or V of part B of this subchapter. The term does not include distilled spirits, wine, malt beverages, or tobacco, as those terms are defined or used in subtitle E of the Internal Revenue Code of 1986." The Illinois crime of Possession of Methamphetamine Manufacturing Materials as defined in 720 ILCS 646/30 does not fall within this federal definition. In fact, the Illinois crime of Possession of Methamphetamine Manufacturing Materials appears to be specifically excluded from inclusion in a 924(e)(2) offense by its own definition of controlled substance in Section 802(6). Section 802(6) defines a controlled substance as "a drug or other substances, or immediate precursor, included in Schedule I, II, III, IV, or V of part B of this subchapter." Section 646/30 of the Illinois statute specifically excludes precursors as a basis for violation of the statute. In fact, if an individual were to be charged under Section 646/30 of the Illinois statute and the State then presented evidence at a trial that the individual possessed only a precursor, the trier of fact would have to acquit because to violate that statute, the individual must "knowingly engage in the possession, procurement, transportation, storage, or delivery of any methamphetamine manufacturing material, <u>other than a methamphetamine precursor, substance containing a methamphetamine precursor, or anhydrous ammonia</u>…" Moreover, the remaining items listed in the Illinois 646/10 definition

of "methamphetamine manufacturing materials" are not specifically listed in Schedule I, II, III, IV, or V of part B of 21 U.S.C. 812.

Accordingly, the elements of Possession of Methamphetamine Manufacturing Materials are broader than the elements of the relevant generic offenses. This breadth is not simply a result of a state statute criminalizing more than the generic offenses; here, the statute criminalizes conduct entirely outside the scope of the generic offenses defined by the federal statute. Thus, the categorical approach dictates that Possession of Methamphetamine Manufacturing Materials cannot trigger the recidivism provisions of 21 U.S.C. §841(b)(1)(A).

## CONCLUSION

For each of the foregoing reasons, Defendant, Nathaniel Stone, objects to the Government's Amended Information Charging Prior Offense, and respectfully requests this Court enter an order dismissing the same and granting any other such and further relief as this Court deems reasonable and just.

Respectfully submitted,

Nathaniel Stone**,** Defendant

By:     /s/ William L. Vig
              Attorney for Defendant

William L. Vig (#6284192)
VIG LAW, P.C.
1100 South 5th Street
Springfield, IL 62703
(217) 241-5628
bill@vig-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2020, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send notification

of such filing to the following:

Assistant U.S. Attorney Matthew Weir        matthew.weir@usdoj.gov


/s/ William L. Vig
Attorney for Defendant